# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

DONNA MARIE EVERHART,

        Plaintiff,

v.

                                        Case No. 3:20-cv-86-JRK

KILOLO KIJAKAZI,[1]
Acting Commissioner of Social
Security,

        Defendant.

_____/

## OPINION AND ORDER[2]

### I.  Status

Donna Marie Everhart ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of rheumatoid arthritis and osteoarthritis in her "hand" and "ankle." See Transcript of Administrative

---

[1]    Kilolo Kijakazi recently became the Acting Commissioner of Social Security. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 14), filed June 24, 2020; Reference Order (Doc. No. 16), entered June 25, 2020.

Proceedings (Doc. No. 13; "Tr." or "administrative transcript"), filed June 23, 2020, at 50, 58, 67, 78, 175, 226 (capitalization and emphasis omitted).

On November 18, 2016, Plaintiff filed an application for DIB, alleging a disability onset date of August 21, 2015. Tr. at 188.[3] On December 5, 2016, Plaintiff filed an application for SSI, alleging a disability onset date of August 21, 2015. Tr. at 196.[4] The applications were denied initially, Tr. at 57-63, 64, 93, 97-99 (DIB); Tr. at 49-55, 65, 92, 94-96 (SSI), and upon reconsideration, Tr. at 77-87, 88, 101, 102-06 (DIB); Tr. at 66-76, 89, 107, 108-12 (SSI).

On February 1, 2019, an Administrative Law Judge ("ALJ") held a hearing, during which he heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 33-48. At the time of the hearing, Plaintiff was 46 years old. Tr. at 36. On February 14, 2019, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 17-28.

Thereafter, Plaintiff requested review of the Decision by the Appeals Council, see Tr. at 171-73, and submitted additional evidence in the form of a brief authored by Plaintiff's counsel, Tr. at 4, 5; see also Tr. at 277-78 (brief).

---

[3]    Although actually completed on November 18, 2016, see Tr. at 188, the protective filing date of the application is listed elsewhere in the administrative transcript as November 17, 2016, see, e.g., Tr. at 57-58, 78.

[4]    Although actually completed on December 5, 2016, see Tr. at 196, the protective filing date of the application is listed elsewhere in the administrative transcript as November 17, 2016, see, e.g., Tr. at 49-50, 67.

On November 29, 2019, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, making the ALJ's Decision the final decision of the Commissioner. On January 30, 2020, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff makes two arguments: 1) the ALJ's residual functional capacity ("RFC") determination is unsupported by substantial evidence on the ground that he did not order a new consultative exam (and thus failed to develop a full and fair record) after finding Frank Walker, M.D.'s May 2017 opinion was rendered what Plaintiff characterizes as "stale" by additional evidence;[5] and 2) the "ALJ failed to properly consider Plaintiff's subjective complaints as he did not address Plaintiff's financial constraints and resulting lack of treatment under the prevailing rules and" Code of Federal Regulations ("Regulations"). Plaintiff's Memorandum of Law (Doc. No. 18; "Pl.'s Mem."), filed August 24, 2020, at 6, 9 (emphasis omitted). On October 1, 2020, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem.") addressing Plaintiff's arguments.

After a thorough review of the entire record and consideration of the

---

[5]        Dr. Walker, the State Agency consultant, rendered what Plaintiff describes as a "stale" opinion, on May 12, 2017 at the reconsideration level. See Pl.'s Mem. at 6; see also Tr. at 77-87 (DIB); Tr. at 66-76 (SSI).

parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II.   The ALJ's Decision

When determining whether an individual is disabled,[6] an ALJ must follow the five-step sequential inquiry set forth in the Regulations, determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 20-27. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since August 1, 2016, the alleged onset date." Tr. at 20 (emphasis and

---

[6]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

citation omitted).[7] At step two, the ALJ found that Plaintiff "has the following severe impairments: inflammatory arthritis and migraines." Tr. at 20 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 20 (emphasis and citation omitted).

> The ALJ determined that Plaintiff has the following RFC:
>
> [Plaintiff can] perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except she is able to sit for up to 7 hours per day for 1 hour at a time; stand and/or walk for 4 hours per day for up to 30 minutes at a time; lift up to 20 pounds occasionally and 10 pounds frequently; handling and fingering would be limited to frequently; limited to occasional bending, stooping and kneeling but no crouching or crawling; limited to occasional stairs but no ladders, ropes or scaffolds and limited to occasional reaching above shoulder level.

Tr. at 20 (emphasis omitted).

At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as a "Bartender," "Cashier II" and "Stocker clerk." Tr. at 26 (emphasis and citation omitted). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age ("43 years old . . . on the alleged disability onset date"), education ("a limited education"), work experience, and

---

[7] The ALJ's Decision states that "[t]hrough her undersigned representative, [Plaintiff] requested to amend her onset date to August 1, 2016." Tr. at 17. Upon review of the administrative transcript, the undersigned did not find any record that Plaintiff amended her alleged onset date, and Plaintiff contends that she did not amend it. See Pl.'s Mem. at 1 n.1. However, this does not affect the Court's analysis.

RFC, the ALJ relied on the testimony of the VE and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 26 (emphasis and citation omitted), such as "Addresser," "Call out operator," and "Charge account clerk," Tr. at 27 (emphasis omitted). The ALJ concluded that Plaintiff "has not been under a disability . . . from August 1, 2016[ ] through the date of th[e D]ecision." Tr. at 27 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court

to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

As noted above, Plaintiff challenges the ALJ's Decision on two grounds: that her RFC is not supported by substantial evidence because the ALJ did not order a new consultative exam (and thus failed to develop a full and fair record); and that the ALJ failed to provide a proper analysis of her subjective complaints, especially in light of Plaintiff's financial constraints. These arguments are addressed in turn below.

### A.   Whether the ALJ's RFC Determination is Supported by Substantial Evidence

### 1.   Parties' Arguments

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence as the ALJ failed to order a new consultative exam after he determined Dr. Walker's May 2017 opinion "was rendered stale by additional evidence." Pl.'s Mem. at 6. More specifically, Plaintiff contends that the ALJ's

weighing of opinions is "nonsensical" because he gave "great weight" to Lance I. Chodosh, M.D.'s [8] medical opinion rendered three months prior to Dr. Walker's May 2017 opinion that he gave "little weight" on the ground that the evidence of record had been supplemented. See id. at 7. As such, Plaintiff asserts that "none of the opinions of record provided substantial evidence regarding Plaintiff's current level of functioning at the time of the [D]ecision" and the ALJ therefore failed to develop a full and fair record. Id. at 8 (citation omitted).[9]

Responding, Defendant asserts that "the medical opinions of record constitute substantial evidence supporting the ALJ's [D]ecision." Def.'s Mem. at 9. Defendant argues, "Although the ALJ generously assigned Plaintiff more limitations than the medical experts opined was necessary, the opinions of the state agency physician [(Dr. Walker)] and the consultative examiner [(Dr. Chodosh)] confirmed that Plaintiff did not have work-preclusive limitations." Id. Defendant further contends that "the ALJ easily could have found Plaintiff capable of a reduced range of medium work based on [Dr. Chodosh's and Dr. Walker's] opinions, [but] the ALJ gave her the benefit of the doubt and limited

---

[8]     Dr. Chodosh was the medical doctor who performed Plaintiff's consultative examination on February 17, 2017 at the initial determination level. See Tr. at 323-30.

[9]     Plaintiff argues, in the alternative, that "even if [Dr. Chodosh's and Dr. Walker's] opinions were . . . found relevant; they still do not provide substantial evidence to support the ALJ's RFC." Pl.'s Mem. at 8.

her to light exertional work." Id. Finally, Defendant states that, considering Dr. Chodosh's and Dr. Walker's opinions were consistent with medium extertional work (instead of the assigned RFC to perform light work), "it seems odd to criticize the ALJ for being more generous to Plaintiff in deciding to credit some of her subjective allegations, when the ALJ could have easily credited none of them." Id. at 11.

### 2. Applicable Law

#### a. Medical Opinions[10]

"Medical opinions are statements from [physicians or other] acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Acceptable medical sources include licensed physicians, licensed psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1502(a).

---

[10]    On January 18, 2017, the SSA revised the Rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844, 5,844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (Mar. 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Because Plaintiff filed her claim before that date, the undersigned cites the Rules and Regulations that are applicable to the date the claim was filed.

The Regulations establish a hierarchy among medical opinions that provides a framework for determining the weight afforded each medical opinion. See 20 C.F.R. § 404.1527. Essentially, "the opinions of a treating physician are entitled to more weight than those of a consulting or evaluating health professional," and "[m]ore weight is given to the medical opinion of a source who examined the claimant than one who has not." Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1259, 1260 n.5 (11th Cir. 2019). Further, "[n]on-examining physicians' opinions are entitled to little weight when they contradict opinions of examining physicians and do not alone constitute substantial evidence." Id. at 1260 (citing Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. § 404.1527(c)(2)-(5); see also 20 C.F.R. § 404.1527(f); Walker v. Soc. Sec. Admin., Comm'r, 987 F.3d 1333, 1338 (11th Cir. 2021) (citation omitted); McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citation omitted) (stating that "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians['] opinions] are given more weight than [non-treating physicians;] and the

opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists").

An ALJ is required to consider every medical opinion. See 20 C.F.R. § 404.1527(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); see also 20 C.F.R. § 404.1527(c)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz, 825 F.2d at 279); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.  "It is the responsibility of the agency, not the reviewing court, to supply the justification for its decision and to sufficiently explain the weight it has given to obviously probative exhibits." Simon, 7 F.4h at 1105 (quotation and citations omitted).

### b.    RFC Assessment

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R.

§ 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Social Security Ruling ("SSR") 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

### c.    Duty to Develop a Full and Fair Record

"It is well-established that the ALJ has a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d) (2003), subsequently renumber to 20 C.F.R. § 416.912(b) (2017)); see also Ingram v. Comm'r Soc. Sec., 496 F.3d 1253, 1269 (11th Cir. 2007) (citing Doughty, 245 F.3d at 1281). "Nevertheless, the claimant bears the burden of proving that he [or she] is disabled, and, consequently, he [or she] is responsible for producing evidence in support of his [or her] claim." Id. (citations omitted). To remand a case for the ALJ's failure to fully develop the record, there must be a showing that the claimant's right to due process has been violated because of such failure. Brown v. Shalala, 44 F.3d 931, 934-35 (11th Cir. 1995) (citing Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985)). Prejudice exists if the record contains evidentiary gaps which may cause the ALJ to reach an unfair determination due to the lack of evidence, id. at 935, or

if "the ALJ did not consider all of the evidence in the record in reaching his decision," <u>Kelley</u>, 761 F.2d at 1540. While "[t]he [ALJ] has a duty to develop the record where appropriate[,]" the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." <u>Ingram</u>, 496 F.3d at 1269 (citing <u>Doughty</u>, 245 F.3d at 1281).

### 3.    Analysis

The ALJ found that Plaintiff could perform "light work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with additional limitations. <u>See</u> Tr. at 20. In determining Plaintiff's RFC, the ALJ considered all symptoms and the extent to which the symptoms were consistent with the objective medical evidence and other evidence. <u>See</u> Tr. at 20, 21-22 (summarizing Plaintiff's hearing testimony); Tr. at 22-24 (discussing Plaintiff's medical history). The ALJ also considered opinion evidence. <u>See</u> Tr. at 20, 25; <u>see also</u> Tr. at 323-30 (Dr. Chodosh's February 2017 consultative examination), Tr. at 66-76 (Dr. Walker's May 2017 opinion for Title XVI benefits), Tr. at 77-87 (Dr. Walker's May 2017 opinion for Title II benefits).

The ALJ gave "great weight" to Dr. Chodosh's consultative <u>exam findings</u> "in light of the sparse and conservative care noted in the treatment records." Tr

at 25;[11] <u>see also</u> Tr. at 323-30. However, the ALJ considered Plaintiff's testimony at the hearing regarding her pain complaints and adjusted Plaintiff's RFC, more favorably for Plaintiff, to light exertional work, instead of relying on Dr. Chodosh's "generalized statement regarding [Plaintiff's] limitations (or lack thereof)[.]" Tr. at 25. As for Dr. Walker's opinion, the ALJ gave "little weight" to his opinion as he found that "the evidence of record has been supplemented and shows that [Plaintiff] is more limited." Tr. at 25-26;[12] <u>see also</u> Tr. at 66-76, 77-87.

Upon review, the undersigned finds the ALJ did not commit reversible error in assigning "great weight" to Dr. Chodosh's consultative <u>exam findings</u> (February 2017) and "little weight" to Dr. Walker's opinion (May 2017). Tr. at 25. Dr. Chodosh performed a "range of motion" exam, <u>see</u> Tr. at 323-25, and a physical examination, <u>see</u> Tr. at 327-29. Dr. Chodosh's overall impression and comments, based "only on objective evidence," state that Plaintiff is able to "stand, walk, sit, stoop, squat, kneel, lift, carry, handle objects, see, hear, and speak normally." Tr. at 330. As for Dr. Walker's opinion rendered on May 12,

---

[11]    When assigning a weight to the opinion evidence, the ALJ's Decision does not mention Dr. Chodosh by name, but the ALJ cites to Exhibit 2F. <u>See</u> Tr. at 25. This exhibit contains Dr. Chodosh's February 2017 consultative exam. <u>See</u> Tr. at 323-30.

[12]    When assigning a weight to the State agency physician's opinion, the ALJ's Decision does not mention Dr. Walker by name, but the ALJ cites to Exhibits 5A and 6A. <u>See</u> Tr. at 25. These exhibits contain Dr. Walker's May 2017 opinion rendered at the reconsideration level. <u>See</u> Exhibit 5A (located at Tr. at 66-76 (SSI)); Exhibit 6A (located at Tr. at 77-87 (DIB)).

2017, he reviewed the available medical evidence and rendered an opinion without physically examining Plaintiff. See Tr. at 66-76, 77-87.

Although the ALJ credited Dr. Chodosh's February 2017 consultative exam findings, the ALJ rejected Dr. Chodosh's "generalized statement" regarding Plaintiff's limitations. Tr. at 25. Further, there is evidence in the administrative transcript that post-date both Dr. Chodosh's consultative exam findings and Dr. Walker's opinions, and the ALJ's Decision makes clear that the ALJ considered all of the treatment and medical evidence. See Tr. at 24-25. The post-2017 medical evidence does not undermine Dr. Chodosh's exam findings as the physical exam findings are mostly unremarkable. See, e.g., Tr. at 368-73 (March 12, 2018 medical records), Tr. at 362-67 (June 13, 2018 medical records).[13] The ALJ also reduced Plaintiff's RFC to light exertional work, which was more favorable for Plaintiff. See Tr. at 20 (RFC determination), 25-26 (explanation). Thus, the ALJ's findings in this regard are supported by substantial evidence.

Regarding whether the ALJ failed to develop a full and fair record, the undersigned finds that the ALJ fulfilled his duty and no prejudice resulted from the ALJ's assessment of Plaintiff's limitations based on the record. The ALJ

---

[13] Although Plaintiff's characterizes both Dr. Walker's and Dr. Chodosh's opinions as "stale," these opinions were more so supplemented by the additional medical evidence submitted after the opinions were rendered.

clearly considered and discussed Plaintiff's medical records in his assessment (noting they have "have been unremarkable") including medical evidence that post-dates Dr. Chodosh's February 2017 consultative exam and Dr. Walker's May 2017 opinion. See Tr. at 22-25; Tr. at 24-25 (discussing Plaintiff's June 2018 medical records). Further, Plaintiff does not allege that there are existing medical records missing from the administrative transcript. In any event, Plaintiff has not shown prejudice requiring remand. There was sufficient evidence in the administrative transcript upon which to base the RFC determination. Thus, no evidentiary gaps exist in the record, and the ALJ did not commit reversible error in this regard.

## B.   Whether the ALJ Erred in Evaluating Plaintiff's Subjective Symptoms

### 1.   Parties' Arguments

Plaintiff also argues that the ALJ "failed to provide a proper analysis of Plaintiff's subjective complaints in accordance with the prevailing rules and [R]egulations as he ignored Plaintiff's inability to afford treatment, her medication side effects, and her fear of medications" and that the ALJ "failed to properly account for other reasons why Plaintiff's treatment was not as extensive as the ALJ would have liked." Pl.'s Mem. at 9-10.

Responding, Defendant contends that the ALJ considered "Plaintiff's minimal use of medications for her rheumatoid arthritis" and "the sparsity of

medical evidence regarding Plaintiff's treatment, which suggested that her pain and symptoms were not as limiting as she alleged." Def.'s Mem. at 5, 8 (citations omitted).

### 2.   Applicable Law

#### a.   Subjective Complaints

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

"When evaluating the claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). To reject the claimant's assertions of subjective

symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

In 2017, the SSA issued new guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms. The SSA has "eliminat[ed] the use of the term 'credibility' from [its] sub-regulatory policy, as [the R]egulations do not use this term." SSR 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017). "In doing so, [the SSA has] clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." Id. Accordingly, ALJs are "instruct[ed] . . . to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." Id. "The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." Cole v. Colvin, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

### b.   Inability to Afford Treatment

"When denying an application based on a claimant's failure to comply with prescribed medical care, the ALJ must consider whether the claimant is

able to afford the medical care." <u>Brown v. Comm'r Soc. Sec.</u>, 425 F. App'x 813, 817 (11th Cir. 2011) (citing <u>Ellison</u>, 355 F.3d at 1275). A claimant's inability to afford medical care excuses her lack of such care. <u>Dawkins v. Bowen</u>, 848 F.2d 1211, 1213 (11th Cir. 1988) (stating that the court "agree[s] with every circuit that has considered the issue that poverty excuses noncompliance [with prescribed medical treatment]") (citations omitted). "Nevertheless, if the claimant's failure to follow medical treatment is not one of the principal factors in the ALJ's decision, then the ALJ's failure to consider the claimant's ability to pay will not constitute reversible error." <u>Id.</u> (citing <u>Ellison</u>, 355 F.3d at 1275).

### 3. Analysis

Here, the ALJ followed SSR 16-3P and found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e D]ecision." Tr. at 24. Although the ALJ did note that Plaintiff has "rather limited treatment through her PCP"[14] and the overall evidence "does not show much by way of any recent care," he discussed the entirety of the medical evidence and the "unremarkable" and "normal" results stemming

---

[14]     PCP likely stands for primary care physician.

19

from Plaintiff's treatment. Tr. at 25-26. The ALJ also noted that Plaintiff had not sought any emergent care services. See Tr. at 25.

Additionally, the ALJ discussed the inconsistency between Plaintiff's allegations that she was not taking medications and that her prescribed medications were "really severe" and a "big risk." Tr. at 25; see also Tr. at 39-40, 43 (hearing testimony). The ALJ observed that this testimony was inconsistent with Plaintiff's medical records that indicated she was taking a variety of medications and that she denied any side effects at that time. See Tr. at 25; see also Tr. at 233. Moreover, the ALJ discussed Plaintiff's testimony at the hearing describing her activities of daily living ("ADL(s)"), such as Plaintiff can wash dishes (but has to and rest before she finishes them), drive, and grocery shop. Tr. at 25.

Contrary to Plaintiff's arguments that the ALJ "ignored Plaintiff's inability to afford treatment, her medication side effects, and her fear of medications" and "consider[ed] Plaintiff's lack of treatment as a basis for discounting her subjective complaints," Pl.'s Mem. at 9-10, 11, the ALJ's Decision reflects adequate consideration of the relevant factors set forth in SSR 16-3P. The ALJ's determination that the effects of Plaintiff's impairments were not as great as Plaintiff alleged is supported by substantial evidence.

## V.   Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), and pursuant to § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2.      The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on September 13, 2021.

*James R. Klindt*

JAMES R. KLINDT
United States Magistrate Judge

keh
Copies:
Counsel of Record

21